RECEIVED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

2017 MAY 18 P 4:05

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| MONICA HALL,                       ) | |
|                       ) | |
|      Plaintiffs,             ) | |
|                       ) | CIVIL ACTION NO.: 2:17-cv-324 |
| vs.                         ) | |
|                       ) | |
| OPTUM HOSPICE PHARMACY    ) | PLAINTIFFS DEMAND A |
| SERVICES, LLLC, previously known as   ) | TRIAL BY STRUCK JURY. |
| HOSPISCRIPT SERVIC ES, LLC,     ) | |
|                       ) | |
|      Defendant.            ) | |

## COMPLAINT

## JURISDICTION AND VENUE

1.  This is a suit to obtain relief for race discrimination, gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended. Plaintiff also brings claims under 42 U.S.C. §1981.

2.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4) and 28 U.S.C. §§ 2201 and 2202.

3.  Venue is proper in that the alleged acts occurred in Montgomery County, Alabama.

## PARTIES

4.   Plaintiff Monica Hall is an African-American, female resident of Montgomery County, Alabama who is over the age of 19.

5.   In 2015, UnitedHealth Group Inc.'s OptumRx business completed a $12.8 billion acquisition of pharmacy-benefits manager Catamaran, LLC.

6.   Catamaran LLC owned and operated HospiScript Services, LLC.

7.   Upon information and belief, as the result of OptumRx's acquisition of Catamaran, Hospiscript Services, LLC became Optum Hospice Pharmacy Services, LLC.

8.   Defendant Optum Hospice Pharmacy Services, LLC was previously known as Hospiscript Services, LLC.

9.   Defendant Optum Hospice Pharmacy Services, LLC is a foreign limited liability company that does business in Montgomery County, Alabama.

10.  For the time frame relevant to this action, Defendant was Plaintiff's employer for purposes of Title VII.


## ADMINISTRATIVE REMEDIES

11.  On August 22, 2014 Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  A copy is attached as Exhibit A.

2

12.    On February 17, 2017, the EEOC issued a Dismissal and Notice of Rights to

Ms. Hall.

COUNT I
Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981
Race Discrimination

13.    Plaintiff adopts and incorporates by reference the facts set forth in the

preceding paragraphs.

14.    Plaintiff possess multiple degrees.

15.    In 1999, Plaintiff earned a Bachelor of Arts in Political Science from Alabama

State University.

16.    In 2006, Plaintiff earned a Master of Science in Management from Faulkner

University.

17.    During her employment with Defendant, Plaintiff was pursuing a degree in

clinical mental health counseling from Troy State University in Montgomery.

18.    Defendant interviewed Plaintiff for employment in June or July 2009.

19.    In December 2008, Kelly Services placed Plaintiff in a position with

Defendant.

20.    The position was a temporary to hire position.

21.    In January 2009, Defendant hire Plaintiff as a permanent employee.

22.    In January 2009, Defendant set Plaintiff's annual salary at$27,000.

23.    Around the time Defendant hire Plaintiff, it also hired two white employees:

3

Nicole Adams and Brooke Richardson.

24.   In February or March 2009, Plaintiff applied for the position of Pharmacy Manager in Concept.

25.   Defendant awarded the position of the position of Pharmacy Manager in Concept to a white, male named Josh.

26.   In July 2009, Defendant placed Plaintiff in the position of Administrative Assistant for Sales.

27.   When Defendant placed Plaintiff in the position of Administrative Assistant for Sales, her pay was increased to an annual salary of $31,000.

28.   In February 2010, Plaintiff earned a merit pay increase raising her pay to close to $32,000.

29.   In February 2011, Plaintiff earned a merit pay increase raising her pay to close to $34,000.

30.   In April 2012, Plaintiff earned a merit pay increase raising her pay to close to $35,000.

31.   In August 2012, Plaintiff applied for the position of Strategic Initiative Specialist.

32.   Defendant awarded the position of Strategic Initiative Specialist to a white employee named Kathy Harmon.

33.   In April 2013, Plaintiff earned a 3% merit increase to her salary.

4

34.  In April 2014, Plaintiff earned a 3% merit increase to her salary.

35.  Defendant keeps confidential its pay information.

36.  Administrative assistants for Defendant perform substantially the same work.

37.  The qualifications to be an administrative assistant are substantially the same for Defendant for each position.

38.  The administrative assistant positions for Defendant are substantially similar if not nearly identical.

39.  Through word of mouth, sometime in 2014, Plaintiff learned she was being paid less than white administrative assistants.

40.  Defendant paid similarly situated white administrative assistants at a higher rate of pay than Plaintiff.

41.  Plaintiff's white comparators on pay include, but are not limited to, Lora Christian, Brooke Richardson and Sandy Morris.

42.  The pay disparity between her and her comparators is at least $6,000 to $8,000 a year.

43.  During the events relevant to Plaintiff's claims, Brent Roddy held the position of Director of Business Development and Clinical Practice.

44.  Brent Roddy's race is white.

45.  Starting in September 2013, Brent Roddy became Plaintiff's supervisor.

46.  Prior to Mr. Roddy becoming Plaintiff's supervisor, Defendant had not issued

her any discipline.

47. On February 13, 2014, Brent Roddy issued Plaintiff a "final warning."

48. Plaintiff had not received any discipline from Defendant prior to February 13, 2014.

49. Brent Roddy began making efforts to try to replace Plaintiff with Brooke Richardson.

50. Ms. Richardson's race is white.

51. Plaintiff made several complaints to Brandi Kelsey in Defendant's human resources department regarding Roddy's discriminatory, retaliatory and hostile treatment of her.

52. When Plaintiff's complaints to human resources went unanswered, she complained to Defendant of discrimination through her lawyer in June 2014.

53. After Plaintiff's lawyer sent a letter documenting her complaints of discrimination to Defendant, Mr. Roddy accused Plaintiff of not wanting to do her job.

54. Plaintiff filed a Charge of Discrimination with the EEOC in August 2014 complaining of race discrimination and alleging it appeared the Defendant was trying to make a case to fire her and/or justify the pay disparity between her and white employees after receiving her complaint.

55. Approximately two weeks after Plaintiff filed her EEOC Charge, Defendant

held a meeting among employees to review the results of confidential surveys completed by employees about their supervisors.

56. Defendant permitted Plaintiff's supervisor, Mr. Roddy, to listen to the meeting via speaker phone.

57. During the meeting, Defendant asked Plaintiff if she felt her manager cared about her.

58. Plaintiff felt the question violated the confidential purpose of the survey since Mr. Roddy would be listening to her response.

59. Plaintiff felt the question was an attempt to force her to make statements that could be used against her during the EEOC process.

60. Plaintiff was concerned if she answered truthfully and disclosed the issues relating to her EEOC Charge, it would put her in a position of having to articulate all the matters which were the subject of her EEOC Charge and expose her to immediate cross-examination by Defendant without the benefit of having her lawyer present.

61. Plaintiff was concerned if she answered truthfully and disclosed the issues relating to her EEOC Charge, it would lead to disruption in the work environment.

62. Plaintiff responded it had been a difficult year but did not offer further detail.

63. On or about November 2014, Defendant changed Plaintiff's job title.

7

64. On or about November 2014, Defendant changed Plaintiff's compensation structure from salaried to hourly.

65. On or about November 2014, Defendant changed Plaintiff's terms and conditions of employment as it related to her work hours, overtime and working from home.

66. None of the white administrative assistants working for Defendant were subjected to the same changes in title, compensation structure and/or terms and conditions of employment as Plaintiff.

67. In April 2015, Brent Roddy gave Plaintiff a rating of "below expectations" on her performance review.

68. Roddy based the review on false allegations.

69. Because of the performance review, Defendant denied Plaintiff a pay increase.

70. Throughout her employment with Defendant, it appeared to Plaintiff Defendant showed preference to white employees over black employees with respect to promotion, pay and opportunities.

71. To avoid Defendant's retaliatory and racially discriminatory conduct, Plaintiff resigned her employment to take another job opportunity.

72. Plaintiff's race was a motivating factor in her rate of pay.

73. Plaintiff's race was a motivating factor in the performance evaluation Defendant used to deny Plaintiff a pay increase in 2015.

8

74.  Plaintiff's race was a motivating factor in Defendant's decisions to change her job title and working conditions.

75.  Plaintiff's race was a motivating factor in Defendant's efforts to replace her with a white employee.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests this Court to enter an Order granting judgment in her favor under Title VII of the Civil Rights Act of 1964, as amended and/or 42 U.S.C. §1981 for race discrimination awarding her:

a.  Backpay for the pay disparity she experienced;

b.  Backpay for the pay raise she was denied;

c.  Compensatory to be determined by the trier of fact;

d.  Punitive damages to be determined by the trier of fact;

e.  Interest;

d.  That relief which is fair, equitable and just;

f.  Costs, including a reasonable attorney's fee.

COUNT II
Title VII of the Civil Rights Act of 1964
Gender Discrimination

76.  Plaintiff adopts and incorporates by reference the facts set forth in the preceding paragraphs.

77.  While working for the Defendant, Plaintiff was a single mother.

78.  Brent Roddy was aware of Plaintiff's care-giver responsibilities.

9

79.  Brent Roddy made efforts to replace Plaintiff with someone who was not a single-mother with substantially similar care-giver responsibilities.

80.  In an effort to replace Plaintiff with someone who did not have caregiver responsibilities, Mr. Roddy scrutinized Plaintiff more closely than other employees.

81.  In an effort to replace Plaintiff with someone who did not have caregiver responsibilities, Mr. Roddy issued Plaintiff unwarranted discipline.

82.  In an effort to replace Plaintiff with someone who did not have caregiver responsibilities, tried to replace Plaintiff with Brooke Richardson.

83.  In an effort to replace Plaintiff with someone who did not have caregiver responsibilities, Mr. Roddy paid Plaintiff less than administrative assistants without caregiver responsibilities.

84.  Plaintiff's gender combined with her being a single mother with caregiver responsibilities was a motivating factor in Defendant's adverse treatment of her.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests this Court to enter an Order granting judgment in her favor under Title VII of the Civil Rights Act of 1964, as amended for gender discrimination awarding her:

a.  Backpay for the pay disparity she experienced;

b.  Compensatory to be determined by the trier of fact;

c.    Punitive damages to be determined by the trier of fact;

d.    Interest;

d.    That relief which is fair, equitable and just;

f.    Costs, including a reasonable attorney's fee.

COUNT III
Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981
Retaliation

85.   Plaintiff adopts and incorporates by reference the facts set forth in the preceding paragraphs.

86.   Plaintiff complained to Defendant internally about racially discriminatory treatment.

87.   After Plaintiff complained to Defendant internally, Defendant subjected her to heightened scrutiny.

88.   After Plaintiff complained to Defendant internally, Defendant subjected her to heightened criticism.

89.   After Plaintiff complained to Defendant internally, Defendant made efforts to replace her with Brooke Richardson.

90.   Plaintiff complained to Defendant of race discrimination through her lawyer in June 2014.

91.   After Plaintiff's lawyer sent a letter documenting her complaints of discrimination to Defendant, Mr. Roddy accused Plaintiff of not wanting to

do her job.

92. Plaintiff filed a Charge of Discrimination with the EEOC in August 2014 complaining of race discrimination and alleging it appeared the Defendant was trying to make a case to fire her and/or justify the pay disparity between her and white employees after receiving her complaint.

93. Approximately two weeks after Plaintiff filed her EEOC Charge, Defendant held a meeting among employees to review the results of confidential surveys completed by employees about their supervisors.

94. Mr. Roddy listened to the meeting via speaker phone.

95. During the meeting, Defendant asked Plaintiff if she felt her manager cared about her.

96. Plaintiff felt the question violated the confidential purpose of the survey since Mr. Roddy would be listening to her response.

97. Plaintiff felt the question was an attempt to force her to make statements that could be used against her during the EEOC process.

98. Plaintiff was concerned if she answered truthfully and disclosed the issues relating to her EEOC Charge, it would put her in a position of having to articulate all the matters which were the subject of her EEOC Charge and expose her to immediate cross-examination by Defendant without the benefit of having her lawyer present.

12

99.   Plaintiff was concerned if she answered truthfully and disclosed the issues relating to her EEOC Charge, it would lead to disruption in the work environment.

100.   Plaintiff responded it had been a difficult year but did not offer further detail.

101.   On or about November 2014, Defendant changed Plaintiff's job title.

102.   On or about November 2014, Defendant changed Plaintiff's compensation structure from salaried to hourly.

103.   On or about November 2014, Defendant changed Plaintiff's terms and conditions of employment as it related to her work hours, overtime and working from home.

104.   In April 2015, Brent Roddy gave Plaintiff a rating of "below expectations" on her performance review.

105.   Roddy based the review on false allegations.

106.   Because of the performance review, Defendant denied Plaintiff a pay increase.

107.   To avoid further discriminatory and/or retaliatory conduct, Plaintiff resigned her employment to take another job opportunity.

108.   Plaintiff's complaints of race discrimination caused Defendant to more closely scrutinize her, criticize her, give her a poor performance evaluation, deny her a pay raise, single her out for questioning in the survey meeting, change her job title, change her compensation structure, and change the terms

13

and conditions of her employment.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests this Court to enter an Order granting judgment in her favor under Title VII of the Civil Rights Act of 1964, as amended and/or 42 U.S.C. §1981 for retaliation awarding her:

a.     Backpay to be determined by the trier of fact;

c.     Compensatory to be determined by the trier of fact;

d.     Punitive damages to be determined by the trier of fact;

e.     Interest;

d.     That relief which is fair, equitable and just;

f.     Costs, including a reasonable attorney's fee.

**PLAINTIFFS REQUEST A TRIAL BY STRUCK JURY.**

Respectfully submitted,

Heather Newsom Leonard
Attorney Code - ASB-1152-061H
ATTORNEY FOR PLAINTIFFS

OF COUNSEL:

HEATHER LEONARD, P.C.
P.O. Box 43768
Birmingham, AL 35243
Phone:        (205) 977-5421
Facsimile:    (205) 278-1400
E-mail:        Heather@HeatherLeonardPC.Com

PLEASE SERVE DEFENDANT VIA CERTIFIED MAIL:

Optum Hospice Pharmacy Services, LLC
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104